Dwayne **KELLEY**, Plaintiff–Appellant,

v.

**CROSFIELD CATALYSTS,**
Defendant–Appellee.

No. 97–1643.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 29, 1997.

Decided Feb. 9, 1998.

Michael A. Childers and Danny L. Windham (argued), Chicago, IL, for Plaintiff–Appellant.

Terry J. Smith (argued), Brian R. Carnie, Kessler, Smith & Powen, Chicago, IL, for Defendant–Appellee.

Before FLAUM, RIPPLE, and EVANS, Circuit Judges.

FLAUM, Circuit Judge.

Dwayne Kelley allegedly received authorization from his employer, Crosfield Catalysts ("Crosfield"), to travel to New York in order to "seek custody of [a young girl] for foster care or adoption." Second Amended Complaint at 2. Kelley's trip for this purpose caused him to miss four days of scheduled work. Crosfield terminated Kelley on his next work day on account of this four-day absence; Kelley claims that the dismissal was pretextual and in violation of the Family and Medical Leave Act (FMLA), 29 U.S.C. §§ 2601, 2611–19, 2631–36, 2651–53. The district court dismissed Kelley's Second Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. We disagree with the district court's characterization of the Second Amended Complaint, and we therefore reverse the dismissal and remand the case for further proceedings.

## I. BACKGROUND

Dwayne Kelley began working for Crosfield as a laboratory technician on August 1, 1992. This position required Kelley to work twelve-hour shifts for four consecutive days followed by three consecutive "off" days. Kelley was scheduled to begin a four-day work rotation on October 22, 1993, when he unexpectedly received a phone call from his mother. His mother informed him that the Brooklyn Bureau of Child Welfare was preparing to take custody of Shaneequa Forbes, an eleven-year-old girl. Shaneequa was born into the marriage of Barbara and Michael Forbes, but—although this information was not contained in his Second Amended Complaint—Kelley had reason to believe that he might be the girl's biological father. He told his supervisors at Crosfield that Shaneequa was his daughter. Kelley missed four scheduled workdays while attending to this matter in New York. On his first day back at work, October 29, Crosfield terminated Kelley's employment.

The parties' pleading maneuvers constitute the focus of this appeal. Kelley filed a pro se complaint on October 26, 1995, which alleged that his termination violated the FMLA because he took leave from work in order to "obtain custody of my kids [sic]." Crosfield filed a motion to dismiss this complaint under Rule 12(b)(6), arguing that seeking custody of one's own children was not covered by the FMLA. Before the district court ruled on Crosfield's motion, Kelley filed an amended pro se complaint on April 25, 1996. The amended complaint stated only that the child "grew up" with Kelley, and it referenced Shaneequa's birth certificate on which Barbara and Michael Forbes are listed as the girl's biological parents.

The parties discussed the matter of Shaneequa's parentage at a status hearing regarding the amended complaint five days after it was filed. Kelley admitted there was some confusion about whether he was Shaneequa's father. He stated, "Your Honor, I was told—there is nothing in any records showing that I am the father. I was told that I was the father. So I took this as I'm being the father. But as of late, I found out that I might not even be the father. On record, I am not the father." Based on this colloquy, Crosfield moved to dismiss the amended complaint for failure to state a claim, arguing that obtaining custody of one's own child was not a protected activity under the FMLA.

Kelley soon after retained counsel for the first time and, with Crosfield's consent, filed a Second Amended Complaint. This is the complaint that is the subject of the instant appeal. Crosfield once again moved to dismiss Kelley's complaint pursuant to Rule 12(b)(6) based on his prior admissions to the court that (1) he was Shaneequa's biological

father, and (2) he sought leave from work to obtain custody of her. Kelley responded to the motion by pointing out that his Second Amended Complaint did not allege that he was Shaneequa's biological father; it stated only that he took leave for the purpose of taking the child into foster care or adoption. Any admissions from prior pleadings, Kelley argued, were *functus officio*, or of no further effect, and superseded by the Second Amended Complaint for purposes of the Rule 12(b)(6) determination. Even if the admissions were still valid, Kelley contended that he stated a claim under the FMLA because it is possible to seek custody of one's biological child through adoption or foster care when one currently enjoys no parental rights with respect to the child.

The district court granted Crosfield's motion to dismiss Kelley's Second Amended Complaint. The court first credited Kelley's statements from prior superseded pleadings that he was Shaneequa's biological father. Then, the court stated that the words "adoption" and "foster care" in the FMLA should be given their normal meaning; establishing custody over one's own child would not, in the court's view, qualify under the normal meaning of those words: "[A]n emergency trip to rescue one's own child from a state proceeding does not fit within those definitions or the statutory scheme." In reaching this conclusion, the district judge necessarily considered facts outside the scope of Kelley's Second Amended Complaint, but he did not convert Crosfield's motion to dismiss into a motion for summary judgment.

## II. DISCUSSION

■ Kelley argues that the district court erred by granting Crosfield's motion to dismiss. The facts relating to Shaneequa's biological parentage were not part of the FMLA claim contained in his Second Amended Complaint. Kelley contends that, at the very least, the district court should not have considered these facts without converting Crosfield's motion to dismiss into a motion for summary judgment (and thereby affording Kelley an opportunity to demonstrate the existence of a genuine issue of material fact). But even if the facts were taken as true and considered by the district court, Kelley argues that his leave under these circum-

stances could be covered by the FMLA. We agree with Kelley that the district court erroneously granted Crosfield's motion to dismiss his Second Amended Complaint.

The Family and Medical Leave Act of 1993 affords flexibility in employment for medical or family emergencies to anyone working at least 1250 hours per year at a business employing fifty or more people for at least twenty weeks of the year. See 29 U.S.C. §§ 2611(2), (4). Congressional hearings revealed that the FMLA was needed to help balance the demands of work and family, as well as to ease the burden of caretaking among individual family members. *See* 29 U.S.C. § 2601; *see also Price v. City of Fort Wayne*, 117 F.3d 1022, 1023 (7th Cir.1997). The provision of the FMLA most relevant to the instant appeal is 29 U.S.C. § 2612(a)(1)(B), which provides that eligible employees may receive twelve weeks of excused leave per year "[b]ecause of the placement of a son or daughter with the employee for adoption or foster care."

Kelley's Second Amended Complaint did not make any reference to Shaneequa's biological parentage. It only stated that he traveled to New York to "seek custody of Shaneequa for foster care or adoption." Thus, based on the allegations of the Second Amended Complaint alone, the issue of Kelley's biological connection to Shaneequa was not before the district court. It is apparent, however, that the court considered Shaneequa's biological parentage by concluding that Kelley's emergency trip to New York did not fit within the meaning of the FMLA. The only way the court could have considered that issue was by looking outside the pleadings to Kelley's prior pleadings and colloquy with the court in a status hearing on a rescinded complaint.

■ This is not a permissible practice. It is well-established that an amended pleading supersedes the original pleading; facts not incorporated into the amended pleading are considered *functus officio*. See *Duda v. Board of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1057 (7th Cir. 1998); *Wellness Community–Nat'l v. Wellness House*, 70 F.3d 46, 49 (7th Cir.1995); *Lubin v. Chicago Title & Trust Co.*, 260 F.2d

411, 413 (7th Cir.1958) ("It is hornbook law that an amended complaint complete in itself and making no reference to nor adopting any portion of a prior complaint renders the latter *functus officio.*"); *Nisbet v. Van Tuyl,* 224 F.2d 66, 71 (7th Cir.1955) ("An amended pleading ordinarily supersedes the prior pleading. The prior pleading is in effect withdrawn as to all matters not restated in the amended pleading, and becomes *functus officio.*") (footnote omitted); *see also* 3 JAMES WM. MOORE, ET AL., MOORE'S FEDERAL PRACTICE ¶ 15.17[3] (3d ed. 1997) ("An amended pleading that is complete in itself and does not reference or adopt any portion of the prior pleading supersedes the prior pleading."). If certain facts or admissions from the original complaint become *functus officio,* they cannot be considered by the court on a motion to dismiss the amended complaint. A court cannot resuscitate these facts when assessing whether the amended complaint states a viable claim.

The Fifth Circuit faced an analogous issue in *Hibernia National Bank v. Carner,* 997 F.2d 94 (5th Cir.1993). Appellant Carner was one of eight partners in a partnership that defaulted on a mortgage with Hibernia. Hibernia foreclosed on the mortgage and sued the partnership for a deficiency judgment. In Hibernia's original complaint, the Bank stated that Carner was only liable for 5% of the partnership's deficiency judgment. Hibernia filed an amended complaint in which this "judicial confession," as the court called it, was "amended away." *Id.* at 101. The Fifth Circuit held that Carner could not rely on Hibernia's "admission" from the original complaint in refuting the Bank's motion for summary judgment based on the amended complaint. *Id.*

The same principle applies in the instant case. Any facts that Kelley had pleaded in his first two complaints were effectively nullified for 12(b)(6) purposes when he filed his Second Amended Complaint, which did not reference those facts. There was no longer any "confession" in the pleadings on which the district court could rely when reviewing Crosfield's motion to dismiss the Second Amended Complaint. The only relevant fact before the district court at the 12(b)(6) stage of this case was that Kelley took leave to travel to New York in an attempt to place Shaneequa Forbes in his custody "for adoption or foster care." This allegation states a claim under the FMLA.

■ In addition, we think it is important to note that Kelley could have stated a viable FMLA claim even if his Second Amended Complaint had declared that he was the biological father of Shaneequa. The district court believed that the "usual sense" of the relevant FMLA terms "adoption" and "foster care" did not encompass a situation in which a biological father takes custody of his own child. Indeed, the Department of Labor has defined the term "adoption" as used in the FMLA as the "legal process in which an individual becomes the legal parent of *another's* child." 5 C.F.R. § 630.1202 (emphasis added). The court seemed to fear that allowing one to adopt one's own child or to take the child into foster care would grant FMLA coverage to run-of-the-mill custody disputes.

■ This is not just another custody case, though, and we believe that Kelley could state a valid claim under the FMLA. Dismissal of an action under Rule 12(b)(6) is warranted only if Kelley could prove no set of facts in support of his claims that would entitle him to relief. *See General Elec. Capital Corp. v. Lease Resolution Corp.,* 128 F.3d 1074, 1080 (7th Cir.1997). When faced with ambiguities in this inquiry, we give the benefit of any doubt to the plaintiff. *See Early v. Bankers Life & Casualty Co.,* 959 F.2d 75, 79 (7th Cir.1992). We do not believe that the statutory terms and regulatory definitions bar Kelley's suit. The FMLA defines "son or daughter" as "a biological, adopted, or foster child, a stepchild, a legal ward, or a child of a person standing in loco parentis." 29 U.S.C. § 2611(12). Thus, in light of this definition, the FMLA expressly protects leaves taken "[b]ecause of the placement of a [biological child] with an employee for adoption or foster care." 29 U.S.C. § 2612(a)(1)(B). Furthermore, Kelley was not Shaneequa's father of record—unlike the usual situation in custody disputes—and he would have sought leave to take custody of a child who (according to public record) was "another's child."

It will indeed be unusual to encounter a situation in which a biological parent takes a

leave from work in order to adopt or take into foster care his own child. This situation may be rare, but Kelley has proven that it is not entirely impossible. In a case such as this in which a biological parent has no custodial rights over a child and is not listed as the child's parent as a matter of record, it may be possible for that parent to adopt his own child. Thus, regardless of whether he was the biological father, Kelley could state a claim under the FMLA.

## III. CONCLUSION

Discovery may reveal Kelley's claims to be meritless. The face of the complaint, however, does not establish this conclusion because Crosfield failed to prove that there is no set of facts that would entitle Kelley to relief. Dismissal, therefore, was unwarranted. For the foregoing reasons, we reverse the district court's dismissal of Kelley's Second Amended Complaint and remand the cause for further proceedings.