**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-2457
_____

ALVIN WASHINGTON,
                              Appellant

v.

JUSTIN BODER;
ADAM JOSEPH HOFFMAN

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(E.D. Pa. Civ. No. 5:14-cv-04972)
District Judge: Honorable Juan R. Sánchez

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 28, 2019
Before:  CHAGARES, BIBAS and GREENBERG, Circuit Judges

(Opinion filed January 29, 2019)
_____

OPINION*
_____

PER CURIAM

　　Alvin Washington appeals an adverse judgment entered by the District Court in

this action brought under 42 U.S.C. § 1983.  The District Court had granted motions to

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

dismiss filed under Fed. R. Civ. P. 12(b)(6), concluding that Washington had failed to state a viable civil rights claim. We will affirm.

I.

Washington was a tenant of 1039 Marion Street in Reading, Pennsylvania.[1] So, too, was Lisa Ganns, the mother of Washington's son. During a February 2013 Super Bowl party, three Reading police officers arrived at 1039 Marion Street in response to a domestic violence complaint by Ganns. An arrest of Washington ensued. At the conclusion of a post-arrest preliminary hearing—at which ADA Justin Bodor[2] served as prosecutor—Washington was released on bail.[3]

Months later, on September 17, 2013, Officer Adam Hoffman of the Reading police responded to another complaint from Ganns, who had reported that Washington broke her computer, threatened her life, and possessed a rifle at their residence. Although

---

[1] We accept as true all plausible allegations of fact in Washington's third amended complaint. Baldwin v. Univ. of Pittsburgh Med. Ctr., 636 F.3d 69, 73-74 (3d Cir. 2011).

[2] We use the correct spelling of Bodor's name (not "Boder") in the body of this Opinion.

[3] During that hearing, Washington (who is Black) testified that he was assaulted by the (all white) arresting officers. Washington would later allege that "a white man would have been treated differently . . .." Bodor's Supp. App'x Vol. I ("A###"), p. 56. Allegations quoted here and elsewhere are from Washington's operative pleading, which is contained in a supplemental appendix filed by Bodor, whose motion for leave to file it is granted. To the extent that Bodor also moved to expand the record on appeal, the motion is granted in part, insofar as the documents he included in the supplemental appendix—separate from those described in Fed. R. App. P. 10(a) and 30(a)(1), and Third Circuit L.A.R. 30.3(a)—are publicly available state court docket sheets. Cf. Indian Palms Assocs., Ltd., 61 F.3d 197, 205-06 (3d Cir. 1995) ("Judicial notice may be taken at any stage of the proceeding, including on appeal, as long as it is not unfair to a party to do so and does not undermine the trial court's factfinding authority.") (internal quotations and citations omitted). The motion to expand is otherwise denied.

2

Officer Hoffman found no 'firearms' in the home[4], a phone call between him and Bodor resulted in a decision to have Washington "evicted" without a court order.[5]

In 2014, Washington filed this pro se civil rights action against a handful of government officers and entities, but only his Fourteenth Amendment procedural due process claim against Bodor and Officer Hoffman (collectively, "Defendants") is pertinent to this appeal.[6] Washington specifically claimed that the September 17, 2013 "eviction" was a deprivation of his valid leasehold interest in continued residency at 1039 Marion Street. Washington also claimed that Defendants effected his removal from the

---

[4] It was determined "that the rifle . . . identified by Ganns was a BB gun." A057.

[5] Bodor called Officer Hoffman after being contacted by Ganns. Washington alleged that Bodor alerted Officer Hoffman to Washington's release on bail—related to the February 2013 incident of domestic violence involving Ganns—and that Bodor directed Officer Hoffman to keep Washington away from the home. Officer Hoffman, for his part, told Washington after he was "evicted" that he would be arrested if he ever entered the home again. The details of what allegedly transpired next were set forth in Washington's second amended complaint, but were omitted from the third. We have not considered the allegations in the second amended complaint or other superseded pleadings as part of our analysis. Cf. W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank, 712 F.3d 165, 173 (3d Cir. 2013) (explaining that, "at the motion to dismiss stage . . . the district court typically may not look outside the four corners of the amended complaint").

[6] The District Court dismissed all claims against Berks County and the City of Reading because Washington presented no allegations supporting liability under Monell v. Department of Social Services, 436 U.S. 658 (1978). Claims against Reading's District Attorney, Chief of Police, and Mayor were dismissed because Washington's theory of respondeat superior liability is not permissible in a § 1983 action. Washington's malicious prosecution claim was dismissed because none of his convictions had been invalidated; Bodor also was entitled to absolute immunity under Imbler v. Pachtman, 424 U.S. 409 (1976), relating to that claim. Washington withdrew his claims against the Attorney General of Pennsylvania. Later in the proceeding, the District Court denied Washington's motion to tack on a Fourth Amendment claim, concluding that such a request was unreasonably belated, and futile in any event given the plainly expired two-year statute of limitations applicable to the claim.

property without first affording him an opportunity to contest the basis for such action, even though there was "no imminent danger that warranted an eviction." A059.

Defendants separately filed motions to dismiss under Rule 12(b)(6). The District Court granted the motions and dismissed Washington's claims with prejudice. The District Court concluded that Washington failed to adequately plead, among other things, a procedural due process claim under the Fourteenth Amendment. Relying on public court records, the District Court determined that Washington and Ganns were defendants in successful eviction proceedings brought by their landlord months before the September 17, 2013 encounter with Officer Hoffman, and that Washington thus had no protectable property interest in the home at that time. Washington appealed.[7]

## II.

The main issue on appeal is whether Washington's procedural due process claim was properly dismissed at the pleading stage.[8] When assessing the viability of such claims, "we employ the familiar two-stage analysis, inquiring (1) whether the asserted individual interests are encompassed within the fourteenth amendment's protection of

---

[7] We have jurisdiction under 28 U.S.C. § 1291, and our review is plenary, see Foglia v. Renal Ventures Mgmt., LLC, 754 F.3d 153, 154 n.1 (3d Cir. 2014). Dismissal under Rule 12(b)(6) is proper if the pleading party fails to allege sufficient factual matter that, if accepted as true, could "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).

[8] For substantially the reasons given in its memorandum order, the District Court properly dismissed Washington's apparent equal protection and conspiracy claims. In particular, we agree with the District Court that Washington pleaded no plausible facts showing gender- or race-based discrimination, or disparate treatment from which such discrimination could be inferred. We also agree that his civil rights conspiracy claim was properly dismissed for want of an adequately pleaded, underlying substantive claim.

4

life, liberty, or property; and (2) whether the procedures available provided the plaintiff with due process of law." Alvin. v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000) (internal citation and quotation marks omitted).

The District Court ruled that Washington was no longer a leaseholder, and therefore lacked a protected property interest in 1039 Marion Street, on September 17, 2013—the day Officer Hoffman ordered Washington to either abandon his residence or face arrest.[9] To support its ruling, the District Court cited court records extrinsic to Washington's pleading. The parties direct our attention to those records and a number of other extra-pleading documents, competing interpretations of which support their 'property interest' arguments on appeal.[10]

We need not resolve the 'property interest' issue, however, because the District Court's decision is supported by an alternative ground. See Murray v. Bledsoe, 650 F.3d 246, 247 (3d Cir. 2011) (per curiam). Defendants have argued that, even if Washington were deprived of his interest in 1039 Marion Street, post-deprivation process available to

---

[9] The Clerk of this Court asked the parties to brief, among things, "whether the District Court record, including the two docket sheets related to the landlord/tenant actions, see Herbert v. Washington, Docket No. MJ-23309- LT-0000050-2013 (Berks Cty. Magis. Dist. Ct.); Herbert v. Washington, Docket No. MJ- 23309-LT-0000336-2013 (Berks Cty. Magis. Dist. Ct.), establish that Appellant did not have a property interest in the residence at issue at the time of the alleged eviction on September 17, 2013."

[10] Regardless whether the District Court is reviewing a motion to dismiss under Rule 12(b)(6) or we are reviewing the District Court's ruling on such a motion, the scope of properly considered materials is limited to "the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Davis v. Wells Fargo, 824 F.3d 333, 341 (3d Cir. 2016) (citation and internal quotations omitted).

5

him was constitutionally adequate to test the validity of the eviction. With due regard to the peculiar facts alleged, we agree. We conclude as a matter of law that Washington failed to plausibly plead an absence of adequate procedures to vindicate the property interest he claims was unlawfully taken away. On that basis, we will affirm.

The general rule is that government must provide procedural due process before depriving persons of their property. See Zinermon v. Burch, 494 U.S. 113, 127 (1990). However, where "the complained of conduct is 'random and unauthorized' (so that state authorities cannot predict when such unsanctioned deprivations will occur)," "the very nature of the deprivation ma[kes] predeprivation process impossible," and "postdeprivation process is all that is due." Brown v. Muhlenberg Twp., 269 F.3d 205, 213 (3d Cir. 2001). Such is the case here, accepting as true Washington's allegations that his removal from 1039 Marion Street was not predicated on an arrest warrant or the terms of a court order or an otherwise valid source of authority, but was instead effected through an ultra vires scheme devised by Bodor and carried out by Officer Hoffman.

Having determined that Washington was due only post-deprivation process, we must examine the adequacy of that process. Doing so leads to the conclusion, as a matter of law, that Washington was afforded a meaningful opportunity to challenge the basis of his alleged eviction on September 17, 2013. Publicly available court filings amenable to judicial notice on appeal, see Indian Palms, supra, 61 F.3d at 205-06, reveal the following: two days after the alleged eviction, a hearing was held in a pending landlord-tenant action related to Washington's legal relationship with the subject residence, see

6

Dist. Ct. ECF No. 37 (Officer Hoffman's motion to dismiss), p. 19 (Exhibit "B")[11]; and three days after the alleged eviction, a hearing was held to determine the conditions of Washington's bail, see A075, which conditions Washington had argued to Officer Hoffman on September 17, 2013, permitted him to live at 1039 Marion Street notwithstanding the presence there of Ganns, see A058.

It is of no moment that Washington apparently did not appear for one or more court hearings following the eviction. Due process requires that the government afford a legitimate "opportunity" to challenge a deprivation of a protected interest; that a litigant failed to take advantage of the opportunity does not make the otherwise-adequate process unconstitutional. See Midnight Sessions, Ltd. v. City of Philadelphia, 945 F.2d 667, 680 (3d Cir. 1991).

Therefore, based on the "matters of public record" identified above, Davis, 824 F.3d at 341, it is plain that Washington was given constitutionally adequate post-

---

[11] Notwithstanding the parties' filing three separate supplemental appendices, none of the appendices, surprisingly, contained the docket sheet for Herbert v. Washington, Docket No. MJ- 23309-LT-0000336-2013 (Berks Cty. Magis. Dist. Ct.), the potential relevance of which was flagged by the Clerk in an order entered November 21, 2017, see Footnote 9, supra. Additionally, we note that while Washington was granted leave to file a supplemental appendix, he was instructed that "[i]f the contents of the supplemental appendix . . . are not a part of the District Court record, a motion to expand the District Court record must . . . be filed within [21 days of March 29, 2018]." Washington submitted a supplemental appendix largely comprised of pro se filings in one of his criminal cases. Because those filings were not made part of the record before the District Court on Defendants' motions to dismiss, Washington needed to file a motion to expand the record on appeal. He did not. Even if we were to liberally construe Washington's reply brief as a hybrid brief and motion to expand, none of the new documents Washington wishes us to consider would have any bearing on the outcome of this appeal.

deprivation process.[12]  Washington thus failed to state a viable procedural due process claim, and the District Court, accordingly, did not err in granting Defendants' motions to dismiss.

The judgment of the District Court will be affirmed.[13]

---

[12] In addition, Washington had an available cause of action, under Pennsylvania tort law, to challenge the allegedly unlawful eviction effected by Officer Hoffman at the direction of Bodor. See Kuriger v. Cramer, 498 A.2d 1331, 1338 (Pa. Super. Ct. 1985); cf. Parratt v. Taylor, 451 U.S. 527, 539 (1981) (recognizing that "the impracticality of providing any meaningful predeprivation process, when coupled with the availability of some meaningful means by which to assess the propriety of the State's action at some time after the initial taking, can satisfy the requirements of procedural due process"), overruled in part on other grounds by Daniels v. Williams, 474 U.S. 327 (1986).

[13] Although the parties' motions for leave to file supplemental appendices all have been granted, see Order, CA No. 17-2457 (3d Cir. Mar. 20, 2018) (Officer Hoffman motion); Order, CA No. 17-2457 (3d Cir. Mar. 29, 2018) (Washington motion); Footnote 3, supra (Bodor motion), no party is permitted to recover costs for any of those appendices inasmuch as they were of such limited value to the Court in the disposition of this appeal.