**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-1151
_____

Z VIEW ENTERPRISES, LLC; Z POINTE ENTERPRISES, LLC; MON VALLEY
FOODS, INC; PENN SUPERMARKETS, LLC, and; SCOZIO SUPERMARKETS,
INC.; SEVEN Z ENTERPRISES, INC.; SUPER 8 CORPORATION; B.L.B. FOODS,
INC.; OCH SUPERMARKETS, LLC; THROCKMORTON ENTERPRISES, INC., and;
THROCKMORTON SUPERMARKETS, INC; CELTIC EAGLE, INC.

v.

GIANT EAGLE, INC.

Mon Valley Foods, Inc.,
Appellant
_____

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 2:17-cv-00740)
District Judge: Hon. Christopher C. Conner
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
October 1, 2020

Before: SHWARTZ, PHIPPS, and FISHER, *Circuit Judges*.

(Filed: November 3, 2020)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

PHIPPS, *Circuit Judge*.

This appeal centers around a sublease between Giant Eagle, Inc., a regional supermarket, and Mon Valley Foods, Inc., the operator of three stores under the Giant Eagle banner in the Monongahela Valley in Southwestern Pennsylvania. The dispute is part of a broader controversy between several other licensed operators of Giant Eagle grocery stores and Giant Eagle. Through two supplemental complaints, those operators allege twenty-seven counts against Giant Eagle, including a claim for false advertising under the Lanham Act, which serves as a basis for federal question jurisdiction and supplemental jurisdiction over the remaining claims. *See* 28 U.S.C. §§ 1331, 1367. In response, Giant Eagle pleaded ten counterclaims, three of which are at issue in this appeal.

Those three counterclaims hinge on the assertion that Mon Valley Foods did not timely renew its sublease for the Fisher Heights supermarket. If that sublease was not renewed, then a retailer's agreement between Mon Valley Foods and Giant Eagle could be terminated at Giant Eagle's option, which could trigger Giant Eagle's option to terminate subleases for the Finleyville and Uniontown stores. Through these counterclaims, Giant Eagle sought to terminate all agreements governing Mon Valley Foods's operation of those three supermarkets under the Giant Eagle brand – all on the premise that Mon Valley Foods did not timely renew the sublease for the Fisher Heights supermarket.

The District Court entered judgment in Giant Eagle's favor on those three counterclaims. It first concluded that the sublease for the Fisher Heights store had

2

expired and was not timely renewed. As a result, the District Court ordered, among other things, specific performance related to Giant Eagle's option to purchase the assets used in operating that store, and it declared that the contracts for the Finleyville and Uniontown stores had terminated. In reaching that result, the District Court expressly determined that there was no just reason for delay, and it entered final judgment under Civil Rule 54(b). *See* Fed. R. Civ. P. 54(b).

Mon Valley Foods timely appealed. In exercising appellate jurisdiction, *see* 28 U.S.C. § 1291, and on *de novo* review, we will affirm the judgment on the pleadings because there are no disputes of material fact and Giant Eagle is entitled to judgment as a matter of law. *See Zimmerman v. Corbett*, 873 F.3d 414, 417 (3d Cir. 2017).

I

Mon Valley Foods opens with a civil procedure argument. It contends that the District Court erred because Giant Eagle waived and abandoned its three counterclaims. Giant Eagle pleaded those counterclaims several months before Mon Valley Foods filed its second supplemental complaint. But according to Mon Valley Foods, Giant Eagle needed to replead those counterclaims in answering the second supplemental complaint, and Giant Eagle did not do so.

Intuitively, such formalism is out of place here. In filing a second supplemental complaint, Mon Valley Foods did not replead all its prior allegations and counts. Instead, it added allegations related only to its new claims. Even so, Mon Valley Foods contends that because it pleaded new allegations, albeit only for those supplemental counts, Giant Eagle had to replead its full array of counterclaims, including counterclaims to Mon

3

Valley Foods's unchanged prior claims. While the law does not always comport with intuition, it does so here, and Mon Valley Foods's argument fails.

In adding new counts, Mon Valley Foods did not file an *amended* complaint but rather a *supplemental* complaint. *Compare* Fed. R. Civ. P. 15(a) (setting forth standards for amending a pleading) *with id.* 15(d) (setting forth standards for supplementing a pleading). An amended pleading "supersedes the earlier pleading and renders the original pleading a nullity." *Palakovic v. Wetzel*, 854 F.3d 209, 220 (3d Cir. 2017) (citing *W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank*, 712 F.3d 165, 171 (3d Cir. 2013)); *see also* 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1476 (3d ed. 2010) ("A pleading that has been amended under Rule 15(a) supersedes the pleading it modifies and remains in effect throughout the action unless it subsequently is modified."). As explained by a leading treatise, amended pleadings relate "to matters that occurred prior to the filing of the original pleading and *entirely replace the earlier pleading*," but supplemental pleadings are distinct in that they "represent additions to or continuations of the earlier pleadings" based on events subsequent to the earlier pleading. 6A Wright & Miller § 1504 (emphasis added).

The question becomes whether Giant Eagle needed to replead its prior counterclaims in response to Mon Valley Foods's *supplemental* complaint. The compulsory counterclaim requirement of Rule 13(a) applies to counterclaims that arise out of a "transaction or occurrence that is the subject matter of the opposing party's claim." Fed. R. Civ. P. 13(a)(1)(A). Under that rule, in answering Mon Valley Foods's

4

supplemental complaint, Giant Eagle had to file any counterclaims that newly arose from the supplemental allegations. But Rule 13 does not compel Giant Eagle to replead – in response to a supplemental complaint – counterclaims that arose from claims in an earlier pleading. Thus, Giant Eagle did not waive or abandon its prior-pleaded counterclaims by not realleging them in its answer to Mon Valley Foods's supplemental complaint.

II

Mon Valley Foods also brings substantive challenges based on its construction of the lease documents for the Fisher Heights store. Those written instruments – the Overlease, the Sublease, and the Agreement Setting Lease Term – are each attached to the pleadings and may be considered in evaluating a motion for judgment on the pleadings. *See* Fed. R. Civ. P. 10(c); *Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 195 (3d Cir. 2019) ("[I]n deciding a motion for judgment on the pleadings, a court may only consider 'the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents.'" (quoting *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010))).

*The Overlease.* The Overlease is a contract governed by Pennsylvania law, signed on January 13, 1998, between Giant Eagle and two individuals: Joan G. and Aldo L. Bartolotta, who at the time owned and operated not only Mon Valley Foods, but also the real property at Fisher Heights. The Overlease contained a specific provision – Section 1.12 – setting the term of the lease. The lease term was to begin on the "Commencement Date," which was defined as the "date hereof." Overlease § 1.1 (JA261). From that date,

5

the Bartolottas agreed to lease the store building at Fisher Heights to Giant Eagle for a term of twenty "Lease Years," subject to optional renewal for two terms – the first for five years, the second for four years. Overlease §§ 1.12, 46.1 (JA264, 291).

The start of that twenty Lease Year period originally depended on other events. The first Lease Year was to begin on the first day of the first full month following the "Completion Date." Overlease § 1.6 (JA262–63). The "Completion Date" was the date on which the Bartolottas completed their "Landlord's Work," which included a series of improvements to the building detailed in an exhibit to the Overlease. Overlease §§ 5.1–2 (JA262, 265–66).

At the close of the twenty Lease Years, Giant Eagle could exercise the first renewal option. To do so, it had to provide written notice to the Bartolottas at least six calendar months before the end of the then current term. But that renewal condition was subject to a notice-and-grace provision. Under that provision, even if Giant Eagle did not timely renew the Overlease, its option to renew would not expire until 30 days after it received notice from the Bartolottas that (i) stated that a renewal was not received and (ii) identified the expiration date for the Overlease.

*The Sublease.* On January 14, 1998, the day after it signed the Overlease for the store building at Fisher Heights, Giant Eagle subleased the building to Mon Valley Foods. The Sublease was governed by Pennsylvania law, and its initial term was "equivalent to the [t]erm described in Section 1.12 of the Overlease." Sublease ¶ 2 (JA238). Similar to the Overlease, the Sublease provided Mon Valley Foods the option to renew for two sequential terms – of five years and then four years. The Sublease

6

further attached the Overlease and stated that the Overlease was "made a part hereof." Sublease ¶ 1 (JA237).

The Sublease nonetheless contained terms distinct from the Overlease. The Sublease did not contain a notice-and-grace provision. Instead, the Sublease's renewal options contained rigid deadlines: it required Mon Valley Foods to provide notice of an intent to renew twelve months before the end of the current lease term, and if notice was not received by that date, the Sublease would terminate at the end of its current term. The Sublease also provided Giant Eagle with "the option to purchase all the assets utilized in operation of the Supermarket" upon termination or expiration of the Sublease. Sublease ¶ 23 (JA245).

*The Agreement Setting Lease Term.* On January 28, 2000, a little over two years after entering the Overlease, the Bartolottas and Giant Eagle entered an Agreement Setting Lease Term. That document recited that the Overlease "by its provisions, established the length of the Lease Term but did not specifically state the [t]erm, as such could not at that time be determined." Agreement Setting Lease Term (JA308). That explanation comports with the Overlease's floating start date for the first Lease Year – which was not a date certain because it depended on the completion of the improvements to the store building. Through the Agreement Setting Lease Term, the Bartolottas and Giant Eagle defined the lease term with certainty, agreeing that the Overlease "shall commence on the 13th day of January, 1998, and shall terminate on the 31st day of December, 2018." Agreement Setting Lease Term (JA308). That agreement bounded

only the term of the Overlease, and it did not recite or include as a term the Completion Date for the Landlord's Work under the Overlease.

In addition to those three legal instruments, the pleadings establish that Mon Valley Foods did not provide a renewal notice for the Sublease to Giant Eagle until January 31, 2018.

On these pleadings, the District Court entered judgment for Giant Eagle. The District Court determined – and Mon Valley Foods does not dispute on appeal – that the December 31, 2018 termination date for the Overlease also served as the termination date for the Sublease. Using that termination date, the District Court then read the Sublease to require renewal twelve months beforehand – by December 31, 2017. But Mon Valley Foods did not renew by that date; instead it submitted its renewal notice on January 31, 2018. On that basis, the District Court determined that the renewal notice was untimely. The District Court also concluded that the Sublease did not incorporate the Overlease's notice-and-grace renewal provision, and thus it was not renewed. Without a notice-and-grace period and with the termination of the Sublease on December 31, 2018, the District Court enforced Giant Eagle's option to purchase "all the assets utilized in the operation of the Supermarket." Sublease ¶ 23 (JA245). And based on the non-renewal of the Sublease, the District Court granted Giant Eagle's other counterclaims to terminate its contracts with Mon Valley Foods for the Finleyville and Uniontown stores.

Mon Valley Foods contests several components of the District Court's analysis. It argues that the Sublease has two ambiguities and that those prevent judgment on the pleadings on the three counterclaims. Next, it contends that even without those

8

ambiguities, factual disputes prevent entry of judgment on the pleadings on the three counterclaims. For the reasons below, those arguments fail.

A.     The Sublease is not ambiguous as to commencement date or its lack of a notice-and-grace period for renewal.

Mon Valley Foods identifies two potential ambiguities in the Sublease – one as to the commencement date and the other regarding the notice-and-grace period for renewal. It argues that those potential ambiguities must be construed in its favor at this stage, thus preventing entry of judgment on the pleadings. But the Sublease is not ambiguous in either respect.

The commencement date for the Sublease is not materially ambiguous. For reference, the Overlease provides that its commencement date is "the date hereof," and it was signed on January 13, 1998. Overlease § 1.1 (JA261). And although it was signed the following day, the Sublease indicates that its initial term shall be the equivalent to the term of the Overlease. Thus, the commencement date for the Sublease was January 13, 1998. That conclusion coincides with the position Mon Valley Foods took in separate state-court litigation. But now, Mon Valley Foods relies on the Agreement Setting Lease Term to argue that the commencement date for the Sublease is ambiguous. That is unconvincing. The Agreement Setting Lease Term specified a date certain for the end of the twenty Lease-Year term for the Overlease, but it did not alter the commencement date for the Overlease, much less the Sublease. As the Overlease did originally, the Agreement Setting Lease Term identified the start date for the Overlease as January 13, 1998. Tellingly, Mon Valley Foods has identified no other date that would render the

9

commencement date for the Sublease capable of another meaning, let alone a commencement date that would alter what is ultimately relevant here: the termination date for the Sublease.

The Sublease is likewise unambiguous as to a notice-and-grace renewal period – it lacks one. Mon Valley Foods argues that the Sublease incorporates the notice-and-grace term from the Overlease because the Sublease attaches the Overlease, states that the Overlease was made "a part hereof," and has the equivalent lease term as the Overlease. But the notice-and-grace period in the Overlease relates to renewal and not to the lease term, and as a renewal provision, it is distinct from the lease term set forth in Section 1.12. Thus, neither the Sublease's incorporation of the lease term from the Overlease nor the Sublease's inclusion of the Overlease as "a part of" the Sublease cause the Overlease's notice-and-grace period to replace the Sublease's more stringent renewal provisions.

B.    Without an ambiguity, extrinsic evidence is not needed to construe the Sublease.

Even without a material ambiguity in the Sublease, Mon Valley Foods identifies factual disputes that it asserts prevent entry of judgment on the pleadings. Mon Valley Foods focuses first on the timeliness of its obligations with respect to Giant Eagle's option to purchase. Although Mon Valley Foods was required to assist Giant Eagle in effectuating that option within a reasonable time, Mon Valley Foods argues that a jury should decide the reasonable-time issue. But in this instance, the determination of a reasonable time is a question of law, and the District Court did not clearly err in its

10

analysis. *See Commonwealth Fin. Sys., Inc. v. Smith*, 15 A.3d 492, 503 (Pa. Super. Ct. 2011) ("Where, as here, the facts are undisputed and the inference plain, the determination of what constitutes a reasonable time is a question of law for the court." (quoting *Trucson Steel Co. v. Fuhrmann & Schmidt Brewing Co.*, 192 A. 679, 680 (Pa. 1937))).

As a fallback, Mon Valley Foods argues that judgment cannot be entered on the pleadings due to other factual disputes. Mon Valley Foods contends that Giant Eagle, through its prior course of conduct, waived the ability to terminate the Sublease for untimely renewal because Giant Eagle had not previously terminated a sublease for that reason in over thirty years of business with independent retailers. Mon Valley Foods also advances an unclean hands affirmative defense by citing evidence that Giant Eagle terminated the Sublease as a litigation tactic. But those external facts and their attendant legal theories cannot overcome the plain text of the Sublease, which provides Giant Eagle a right to terminate the Sublease for untimely renewal. In short, the facts identified by Mon Valley Foods do not undermine the District Court's entry of judgment on the pleadings.

\* \* \*

For the foregoing reasons, we will affirm the judgment of the District Court on three of Giant Eagle's counterclaims.