**Shirley MERVA, Petitioner,**

**v.**

**WORKERS' COMPENSATION APPEAL BOARD (St. John the Baptist R.C. Church), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 27, 2000.

Decided Sept. 14, 2001.

Donna E.M. Davis, Dunmore, for petitioner.

James E. O'Brien, Jr., Scranton, for respondent.

Before PELLEGRINI, Judge, FLAHERTY, Judge, and JIULIANTE, Senior Judge.

FLAHERTY, Judge.

Shirley Merva (Claimant) petitions for review of two orders of the Workers' Compensation Appeal Board (Board).[1] The Board affirmed the decisions of a Workers' Compensation Judge (WCJ) granting the Claim Petition and Fatal Claim Petition filed by Claimant on behalf of her deceased husband, Augustine Merva (Decedent) and granting in part and denying in part Claimant's Penalty Petition. The WCJ also denied Claimant's request for unreasonable contest attorney's fees, denied Claimant's request that Medicare be reimbursed for medical bills incurred by Decedent as the result of his work-related injury, rejected Claimant's argument that Decedent's veterans benefits and social security benefits should be included in the calculation of his average weekly wage and denied Claimant penalties for Employer's failure to timely pay a $2000 expert witness fee for a deposition. We affirm in part and reverse in part.

On February 6, 1995, Claimant filed a Claim Petition alleging that, on December 13, 1992, Decedent suffered a heart attack while he was performing a variety of work-related tasks for St. John the Baptist Roman Catholic Church (Employer) and that this heart attack eventually led to his death on June 2, 1993. Also on February 6, 1995, Claimant filed a Fatal Claim Petition alleging that "Decedent suffered cardiac arrest while at work on December 13, 1992, due to work related stress and/or

---

1. The first order, docketed at A98–0235, addresses the Claim Petition and the Fatal Claim Petition. The second order, docketed at A99–2190, addresses the second Penalty Petition filed by Claimant.

exertion of work activities triggering cardiac arrest." In addition, the Petition alleged that "decedent's long time exposure to chemical substances at work contributed to his heart disease" which resulted in his death on June 2, 1993. The Fatal Claim Petition also alleges that Decedent accumulated approximately $256,692.34 in medical expenses as a result of his heart attack. On May 18, 1995, Employer filed late Answers to the Claim Petition and Fatal Claim Petition denying that Decedent was performing work-related tasks at the time of his heart attack and also denying that Decedent's activities at work caused his heart attack and eventual death.[2]

On May 15, 1998, Claimant filed a Penalty Petition alleging that Employer has failed and refused "to reimburse Medicare for the monies it expended for the medical care of [Decedent], which care was reasonable and medically necessary and which expenses, exceeding $200,000.00, were submitted during the hearings .... and which expenses were not challenged by [Employer] during the hearings", thereby violating Section 430(b) of the Workers' Compensation Act (Act).[3] Claimant also alleged that Employer violated the Act by failing to make timely payment of a $2000 deposition fee. Employer filed an Answer denying the allegations set forth in the Penalty Petition.

Hearings were held before the WCJ, and by decision and order dated December 31, 1997, the WCJ determined that Claimant proved Decedent's activities at work substantially contributed to his heart attack on December 13, 1992. Because the WCJ found that Claimant sustained her burden of proof, he determined that he did not need to address the issue of the effect of Employer's late Answers to Claimant's Claim Petition and Fatal Claim Petition. The WCJ further concluded that Employer presented a reasonable contest. Accordingly, the WCJ granted Claimant's Claim Petition and Fatal Claim Petition and denied Claimant's request for unreasonable contest attorney's fees. With regard to Claimant's May 15, 1998 Penalty Petition, the WCJ issued a decision and order dated June 23, 1999 concluding that Claimant met her burden of proof with regard to certain medical bills and assessed a 50% penalty against Employer for failure to pay those bills. As to the approximately $250,000 in bills paid by Medicare, the WCJ found that there is not sufficient evidence of record to indicate that any specific dollar amount is due and owing to Medicare to allow for penalties to be assessed against Employer for the late payment or nonpayment of those bills. The WCJ also found that Employer did not violate the Act by failing to make timely payment of the $2000 deposition fee. Accordingly, the WCJ granted in part and denied in part Claimant's Penalty Petition. Claimant appealed to the Board, which affirmed the decisions of the WCJ. This appeal followed.[4]

---

**2.** Claimant also filed a Penalty Petition on October 28, 1995. However, Claimant did not appeal the WCJ's denial of this Petition.

**3.** Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 971(b). Section 430(b) provides that: "Any insurer or employer who terminates, decreases or refuses to make any payment provided for in the decision without filing a petition and being granted a supersedeas shall be subject to a penalty as provided

in section 435, except in the case of payments terminated as provided in section 434."

**4.** This court's appellate review over an order of the Board is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated or an error of law was committed. *Republic Steel Corp. v. Work-*

Claimant argues that the WCJ erred by: 1) failing to reimburse Medicare for the monies it expended for the medical care of Decedent and failing to award Claimant penalties for Employer's failure to make timely payment of those bills; 2) failing to include Decedent's veterans and social security benefits in his average weekly wage calculation; 3) failing to impose a 50% penalty for Employer's failure to pay a $2,000 expert witness fee; and 4) refusing to grant attorney's fees for an unreasonable contest because the facts alleged in the Claim Petition and Fatal Claim Petition were deemed admitted due to Employer's late Answers but Employer still challenged those allegations.

■ Section 319 of the Act provides, in pertinent part:

.... Where an employe has received payments for the disability or medical expense resulting from an injury in the course of his employment paid by the employer or an insurance company on the basis that the injury and disability were not compensable under this act in the event of an agreement or award for that injury the employer or insurance company who made the payments shall be subrogated out of the agreement or award to the amount so paid, *if the right to subrogation is agreed to by the parties or is established at the time of the hearing before the workers' compensation judge or the board.*

77 P.S. § 671 (emphasis added). "Subrogation, being an equitable concept, [is] not self-executing and [has] to be asserted with reasonable diligence." *Baierl Chevrolet v. Workmen's Compensation Appeal Board (Schubert)*, 149 Pa.Cmwlth. 367, 613 A.2d 132, 134 (1992) (citing *Humphrey v. Workmen's Compensation Appeal Board (Supermarket Service)*, 100 Pa. Cmwlth. 33, 514 A.2d 246 (1986)).

■ At the November 24, 1998 hearing, Claimant's attorney was questioned extensively regarding her authority to assert a right to subrogation on behalf of Medicare.[5] Claimant's attorney asserts that

*men's Compensation Appeal Board (Petrisek)*, 537 Pa. 32, 640 A.2d 1266 (1994).

5. The following exchange took place between the WCJ and Claimant's attorney:

*WCJ:* Are you representing the interest of Medicare?
*Claimant's attorney:* Your Honor, I'm here to collect a settlement from Medicare.
*WCJ:* Do you have an agreement with [Medicare] to represent their interest today....?
*Claimant's attorney:* I've spoken with them on the phone and they've told me that if there's a settlement in this case, they want to be notified.
*Employer's attorney:* Your honor, this is clearly improper. This has been going on for a year. We raised this issue last December. We raised it last summer. She does not represent Medicare
....
*WCJ:* .... but do we know what the Medicare, quote, unquote, lien [is] now? **What is Medicare actually seeking?**

*Claimant's attorney:* Your Honor, the only evidence I have on that was what I submitted through the Mercy Hospital what Medicare has been paid, in addition to Exhibit No. 12. They told me they would be interested in a compromise, and they would like to be involved if there was a settlement in the case.
*WCJ:* How does that help me through a Penalty Petition?
*Claimant's attorney:* **An exact figure I cannot give you.** If I had a number from the insurance company, I could utilize that.
*Employer's attorney:* How can we be penalized for the failure to pay it then?
*Claimant's attorney:* I could utilize a number from the insurance carrier.
*WCJ:* **Medicare has not given you a number then?**
*Claimant's attorney:* **No,** they've told me to respond to them.
....
*WCJ:* But just so I'm clear, you're not representing the interests of Medicare, are you here today?
*Claimant's attorney:* Your Honor, I am.

Medicare is entitled to subrogation in the amount of more than $250,000 plus interest and that she is entitled to 15% of that $250,000 in attorney's fees. Section 319 of the Act provides that, in this case, subrogation may only be asserted by Medicare. A review of the record, however, indicates that Medicare never asserted that it is entitled to receive a reimbursement for its payment of Decedent's medical expenses. When Claimant's attorney was asked whether she was representing Medicare, she did not affirmatively respond that she is, in fact, representing Medicare, but rather stated that she discussed this matter with Medicare that that they "would like to be involved if there was a settlement in this case." Most importantly, Claimant's attorney did not have a "counsel fee agreement" with Medicare. Based on Claimant's attorney's answers to the WCJ's questions, it is clear that either Claimant's attorney has no authority to request subrogation on behalf of Medicare or that she failed to provide proof that she represents Medicare's interests. Additionally, as the WCJ and the Board correctly noted, there is insufficient evidence of record on which to base an award of subrogation even if Medicare's right to subrogation had been properly asserted, as Claimant's attorney was unable to provide the WCJ and Employer with an exact amount of money that Medicare is allegedly owed. For the foregoing reasons, the WCJ did not err by denying Claimant's Penalty Petition in this regard.[6]

■ Second, Claimant also argues that the WCJ erred by not including Decedent's veterans and social security benefits in the calculation of his average weekly

---

WCJ: You are?

Claimant's attorney: Through the phone communications with them, I am, yes.

WCJ: **Do you have a counsel fee agreement with them?**

Claimant's attorney: **No, I don't.**

WCJ: So how's your representation? It's not in writing?

Claimant's attorney: Through the phone communications. There was a letter saying that they would want to be involved if there was a settlement, and they would do it through me. I should make a communication with them.

WCJ: What authority do you have on behalf of Medicare, any?

Claimant's attorney: Your Honor, I'm collecting their fee.

WCJ: As not attorney for [Claimant] but attorney for them?

Claimant's attorney: Yes.

WCJ: **But they haven't provided you anything?**

Claimant's attorney: **I have nothing to give you today.**

(N.T. 11/24/98, pp. 34–35, 37–38, 74–75) (emphasis added).

6. Our decision only holds that Claimant's attorney failed to prove that she represents Medicare's interests in this matter and that, for this reason, the WCJ properly denied this part of the Penalty Petition. Although neither party raised this issue, we note that Medicare's right to subrogation is governed by Federal law, which provides, in relevant part:

(ii) Action by United States

In order to recover payment under this subchapter for such an item or service, the United States may bring an action against any entity which is required or responsible .... to make payment with respect to such item or service (or any portion thereof) under a primary plan .... or against any other entity .... that has received payment from that entity with respect to the item or service, and may join or intervene in any action related to the events that gave rise to the need for the item or service.

(iii) Subrogation rights

The United States shall be subrogated (to the extent of payment made under this subchapter for such an item or service) to any right under this subsection of an individual or any other entity to payment with respect to such item or service under a primary plan.

42 U.S.C. § 1395y(b)(2)(B)(ii) and (iii). *See also Manning v. Utilities Mutual Insurance Co., Inc.*, 254 F.3d 387 (2d Cir.2001). The decision of this Court makes no determination as to Medicare's right to subrogation under Federal law.

wage. We disagree. The determination of a claimant's or decedent's average weekly wage is a question of law and therefore fully subject to our review. *Stofa v. Workers' Compensation Appeal Board (Florence Mining Company* ), 702 A.2d 381 (Pa. Cmwlth.1997).

■ Initially, we note that although the term "wages" is to be construed as the average weekly "wage" calculated in a defined manner, including board, lodging and certain gratuities and excluding certain employer deductions and fringe benefits, the term "wages" is still not specifically otherwise defined in the Act.[7] Therefore, we may look to the dictionary definition of that term to determine its approved usage. "Wages" is defined as "a payment usually of money for labor or services usually according to contract and on an hourly, daily, or piecework basis."[8] The clear intent of Section 309 is to include wages earned by the claimant or decedent while working for the employer, or employers, in the calculation of the average weekly wage, as the purpose of the Act is to compensate injured workers for their loss of earning power. Veterans benefits and social security benefits are statutorily conferred benefits by the government, not by the employer and are further removed from wages

---

7. Section 309 of the Act provides:

Wherever in this article the term "wages" is used, it shall be construed to mean the average weekly wages of the employe, ascertained as follows:

(a) If at the time of the injury the wages are fixed by the week, the amount so fixed shall be the average weekly wage;

(b) If at the time of the injury the wages are fixed by the month, the average weekly wage shall be the monthly wage so fixed multiplied by twelve and divided by fifty-two;

(c) If at the time of the injury the wages are fixed by the year, the average weekly wage shall be the yearly wage so fixed divided by fifty-two;

(d) If at the time of the injury the wages are fixed by any manner not enumerated in clause (a), (b) or (c), the average weekly wage shall be calculated by dividing by thirteen the total wages earned in the employ of the employer in each of the highest three of the last four consecutive periods of thirteen calendar weeks in the fifty-two weeks immediately preceding the injury and by averaging the total amounts earned during these three periods.

(d.1) If the employe has not been employed by the employer for at least three consecutive periods of thirteen calendar weeks in the fifty-two weeks immediately preceding the injury, the average weekly wage shall be calculated by dividing by thirteen the total wages earned in the employ of the employer for any completed period of thirteen calendar weeks immediately preceding the injury and by averaging the total amounts earned during such periods.

(d.2) If the employe has worked less than a complete period of thirteen calendar weeks and does not have fixed weekly wages, the average weekly wage shall be the hourly wage rate multiplied by the number of hours the employe was expected to work per week under the terms of employment.

The terms "average weekly wage" and "total wages," as used in this section, shall include board and lodging received from the employer, and gratuities reported to the United States Internal Revenue Service by or for the employe for Federal income tax purposes, but such terms shall not include amounts deducted by the employer under the contract of hiring for labor furnished or paid for by the employer and necessary for the performance of such contract by the employe, nor shall such terms include deductions from wages due the employer for rent and supplies necessary for the employe's use in the performance of his labor, nor shall such terms include fringe benefits, including, but not limited to, employer payments for or contributions to a retirement, pension, health and welfare, life insurance, social security or any other plan for the benefit of the employe or his dependents. . . .

Where the employe is working under concurrent contracts with two or more employers, his wages from all such employers shall be considered as if earned from the employer liable for compensation.

77 P.S. § 582.

8. Merriam–Webster's Collegiate Dictionary (10th ed.2000).

than even fringe benefits. They are also not payments made by an employer for the performance of labor on a specified basis. Therefore, they are not wages and cannot be included in the calculation of a claimant's or decedent's average weekly wage. Furthermore, as Section 309 does not provide for the inclusion of these benefits, we must assume that the Legislature did not intend for these benefits to be used in a claimant's or decedent's average weekly wage calculation. Additionally, Claimant has not cited any case law that would allow for the inclusion of these benefits. Accordingly, the WCJ did not err in this regard.

Third, Claimant argues that the WCJ abused his discretion in refusing to award penalties for Employer's failure to timely pay a $2000 expert witness fee for a deposition necessary to support the Claim Petition and the Fatal Claim Petition. We disagree. Section 435(d) of the Act provides:

(d) The department, the board, or any court which may hear any proceedings brought under this act shall have the power to impose penalties as provided herein for violations of the provisions of this act or such rules and regulations or rules of procedure:

(i) Employers and insurers may be penalized a sum not exceeding ten per centum of the amount awarded and interest accrued and payable: Provided, however, That such penalty may be increased to fifty per centum in cases of unreasonable or excessive delays. Such penalty shall be payable to the same persons to whom the compensation is payable. (emphasis added).

77 P.S. § 991(d).

 Moreover, "[a]ssessment of penalties, as well as the amount of penalties imposed, is discretionary, and, absent an abuse of discretion by the WCJ, we will not overturn a penalty on appeal. Even if a violation of the Act is apparent in the record, imposition of a penalty is left to the discretion of the WCJ." *Essroc Materials v. Workers' Compensation Appeal Board (Braho)*, 741 A.2d 820, 825 (Pa.Cmwlth. 1999) (citations omitted).

The following exchange took place at the November 24, 1998 hearing between the WCJ and Claimant's attorney concerning the late payment of the $2000 deposition fee:

Q: How did Doctor Olson do his deposition, on a contingency fee basis? If you won he would get paid, if you didn't—

A: Correct.

Q: And you're filing a Penalty Petition because they didn't pay a bill that was not—there was no bill.

A: There was a bill outstanding and I received four months of bills from him, your honor, and [he] told me there was a fee outstanding.

Q: Was the two thousand for his deposition?

A: For his deposition. It was not for medical services . . . .

Q: But there was no bill. He based it upon the fact that if he was successful he would get paid; if he wasn't, he wasn't going to get paid, and you were not out of pocket that, and [Claimant] was not out of pocket that, is that right?

A: That's correct.

(N.T. 11/24/98, pp. 64–66).

In *Belfonte v. Miller*, 212 Pa.Super. 508, 243 A.2d 150 (1968), the Superior Court held that a contingent fee agreement between a real estate appraiser and his client was unenforceable because "[i]mproper conduct or bias can be predicted easily when the compensation of the witness is directly related to the absolute amount of

an award which may in turn be dependent to a great degree on the testimony of that same witness." *Id.* at 153. In support of its position, the Court cited *In Re Ramschasel's Estate*, 24 Pa.Super. 262 (1904), which held that:

> It is scarcely necessary to cite authority for the proposition that the law having fixed the amount to be paid witnesses for their attendance upon court, a special contract to pay more than the regular witness fees in ordinary cases is void for want of consideration And as being against public policy.... The difficulties and dangers which surround so-called expert testimony are well understood by the profession and it is the manifest duty of our courts to carefully scan all special contracts relating to the employment of experts, providing for the payment of special compensation in addition to the witness fees allowed by law.

*Belfonte* at 152–153.

Thus, under earlier Pennsylvania law, every agreement to pay any witness, expert or otherwise, any amount higher than the amount fixed by law was illegal. Obviously, the strictures of *In Re Ramschasel's Estate* have been eroded by later practice to the point where the Restatement of Contracts, Section 552, updated the written practice with regard to whether experts are permitted to provide testimony that is contingent upon the outcome of a case:

> (1) A bargain to pay one who is subject to legal process, a sum for his attendance as a witness in addition to that fixed by law, is illegal, except as stated in Subsection (2).

> (2) A bargain to pay an expert witness for testifying to his opinion a larger sum than the legal fees provided for other witnesses is illegal only if the agreed compensation is contingent on the outcome of the controversy.

Restatement of Contracts, Section 552.[9]

■■■ Fee agreements with expert witnesses that exceed the legal fee provided for other witnesses are now permitted, therefore, as an exception to the rule against additional witness fees but only if such expert fees are not "contingent on the outcome of the controversy." Restatement of Contracts, Section 552. It is apparent from the testimony before the WCJ that the payment of the deposition fee for Claimant's medical witness was contingent upon Claimant receiving compensation benefits as requested in the Claim Petition and Fatal Claim Petition, i.e. the outcome of the case. Because such an agreement is illegal and unenforceable, this Court will not impose a penalty upon Employer for failing to timely pay this bill. If this Court were to hold otherwise, we would be assisting Claimant in a prohibited transaction. Therefore, neither the WCJ nor the Board erred in determining that Employer should not pay a penalty with regard to this bill.[10]

Finally, Claimant also asserts that because Employer's Answers were untimely, the facts alleged in the Claim Petition and Fatal Claim Petition were deemed admit-

---

9. We also note that, pursuant to Rule 3.4(b) of the Pennsylvania Rules of Professional Conduct, a lawyer shall not ".... offer to pay, or acquiesce in the payment of compensation to a witness contingent upon the content of the or the witness' testimony or the outcome of the case...."

10. Although neither the WCJ nor the Board utilized this reasoning in denying Claimant's Penalty Petition for the late payment of this bill, this Court may affirm the order of a lower tribunal if the result reached is correct without regard to the grounds relied upon by that tribunal. *Moorhead v. Crozer Chester Medical Center*, 564 Pa. 156, 765 A.2d 786, 787 (2001).

ted and it was unreasonable for Employer to contest these allegations. Therefore, Claimant argues that she is entitled to unreasonable contest attorney's fees. We agree.

Section 440 of the Act provides, in pertinent part:

> .... the employe or his dependent, as the case may be, in whose favor the matter at issue has been finally determined in whole or in part *shall be awarded, in addition to the award for compensation, a reasonable sum for costs incurred for attorney's fee,* witnesses, necessary medical examination, and the value of unreimbursed lost time to attend the proceedings: *Provided, That cost for attorney fees may be excluded when a reasonable basis for the contest has been established by the employer or the insurer.*

77 P.S. § 996 (emphasis added).

■■■ Also, Section 416 of the Act provides that:

> Within twenty days after a copy of any claim petition or other petition has been served upon an adverse party, he may file with the department or its workers' compensation judge an answer in the form prescribed by the department. *Every fact alleged in a claim petition not specifically denied by an answer so filed by an adverse party shall be deemed to be admitted by him.* But the failure of any party or of all of them to deny a fact alleged in any other petition shall not preclude the workers' compensation judge before whom the petition is heard from requiring, of his own motion, proof of such fact. If a party fails to file an answer and/or fails to appear in person or by counsel at the hearing without adequate excuse, the workers' compensation judge hearing the petition shall decide the matter on the basis of the petition and evidence presented.

77 P.S. § 821 (emphasis added). "The failure to file a timely answer precludes an employer from presenting any evidence in rebuttal or as an affirmative defense with respect to those alleged facts; the WCJ may only consider the allegations set forth in the claim petition and any additional evidence presented by the claimant." *Dandenault v. Workers' Compensation Appeal Board (Philadelphia Flyers, Ltd.),* 728 A.2d 1001, 1004 (Pa.Cmwlth.1999). *See also Yellow Freight System, Inc. v. Workmen's Compensation Appeal Board,* 56 Pa. Cmwlth. 1, 423 A.2d 1125 (1981); *Heraeus Electro Nite Company v. Workmen's Compensation Appeal Board (Ulrich),* 697 A.2d 603, 605 (Pa.Cmwlth.1997).

■■■ Claimant's Petitions clearly alleged that Decedent suffered from work-related stress and/or exertion of work activities and also long-term exposure to chemical substances at work which contributed to his heart disease and resulted in his death. It is undisputed that Employer failed to file timely Answers to Claimant's Claim Petition and Fatal Claim Petition. Therefore, pursuant to Section 416 of the Act, the facts alleged in those Petitions were deemed admitted by Employer. Employer's contest of those allegations was unreasonable. Employer's late Answers precluded the WCJ from considering any evidence presented by Employer that would be contrary to the allegations set forth in Claimant's Petitions. *Heraeus.* Although Employer had a reasonable contest concerning the issues of whether Medicare should be reimbursed and whether social security and veterans benefits should be included in the average weekly wage calculation, Employer had no grounds at all for contesting the Claim Petition and the Fatal Claim Petition, thereby forcing Claimant to obtain the deposition testimony of an expert witness to defend against Employer's contest, for

**232**

which no reasonable basis was established. The WCJ and the Board erred by ignoring the legal effect of the late Answers which, by themselves, eliminated any reasonable basis for the contest since Employer did not provide the WCJ with a valid excuse for its tardiness. The WCJ erred by refusing to award Claimant attorney's fees with regard to the Claim Petition and Fatal Claim Petition, and the Board erred in affirming that part of the WCJ's decision.

Accordingly, the order of the Board is reversed with regard to the imposition of attorney's fees for an unreasonable contest and this case is remanded to the Board for further remand to the WCJ for a determination as to the amount of attorney's fees that Employer should pay. The order of the Board is affirmed in all other respects.

### ORDER

AND NOW, September 14, 2001, the order of the Workers' Compensation Appeal Board docketed at A98–0235 and dated June 13, 2000, affirming the decision of the WCJ granting the Claim Petition and Fatal Claim Petition and concluding that veterans and social security benefits should not be included in the average weekly wage calculation is hereby AFFIRMED in part REVERSED in part and remanded to the Board to remand to the WCJ to impose unreasonable contest fees on Employer in accordance with the foregoing opinion. The order of the Board docketed at A99–2190 and dated June 13, 2000, affirming the decision of the WCJ denying that part of Claimant's Penalty Petition seeking reimbursement for Medicare and a penalty for late payment of the $2000 deposition fee is hereby AFFIRMED.

Jurisdiction relinquished.