**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-2836
_____

PHILIDOR RX SERVICES LLC;
ANDREW DAVENPORT,
                                    Appellants

v.

POLSINELLI PC;
JONATHAN N. ROSEN

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 2-20-cv-05518)
District Judge:  Honorable Nitza I. Quinones Alejandro
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
September 8, 2023

Before:  CHAGARES, *Chief Judge*, HARDIMAN and MONTGOMERY-REEVES,
*Circuit Judges*.

(Opinion filed: September 27, 2023)
_____

OPINION*
_____

_____

* This disposition is not an opinion of the full Court and under I.O.P. 5.7 does not
constitute binding precedent.

MONTGOMERY-REEVES, *Circuit Judge*.

Philidor RX Services LLC ("Philidor") and Andrew Davenport (collectively, "Appellants") appeal the District Court's order dismissing their breach-of-contract and unjust enrichment claims against Polsinelli PC ("Polsinelli"). The District Court correctly held that Appellants did not state a claim for unjust enrichment or breach of an express term of the underlying contract. And the gist of Appellants' allegations based on implied terms sounds in tort, not contract. Thus, we will affirm the District Court's order.

## I. BACKGROUND[1]

### A. Appellants Hire Polsinelli to Provide Legal Counsel

In 2015, the SEC began investigating Philidor's relationship with Valeant Pharmaceuticals International, Inc. ("Valeant"). Over the next few months, the matter

---

[1] Because Appellants challenge the District Court's order granting a motion to dismiss, we take the facts from the complaint, *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009) (When considering a motion to dismiss, a court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009))).

expanded to include investigations by the United States Congress and the Department of Justice, and Philidor's chief executive officer, Davenport, became a target.

Appellants hired the law firm Polsinelli to represent them. Under the engagement letter ("Contract"),[2] [3] Appellants agreed to pay Polsinelli a flat fee of $12 million.[4] In exchange, Polsinelli agreed that it would "provide legal counsel and assistance in accordance with [the Contract] . . .[,] keep [Appellants] reasonably informed of progress and developments, and respond to [Appellants'] inquiries." App. 71 § 3.[5] Philidor also agreed to make an additional "single payment of $2 [million]" to Polsinelli, which, "in [Polsinelli's] exclusive discretion and approval, may be used to pay reasonable separate counsel legal fees and costs which [Philidor] has agreed to assume." App. 73 § 6.

---

[2] Philidor and Davenport executed separate engagement letters with Polsinelli. Because the operative language from these letters is identical, we use the singular term "Contract" and rely on Philidor's engagement letter.

[3] Appellants did not attach the Contract to their complaint. That does not prevent us from considering its full language at the motion-to-dismiss stage, however, because the Contract is "integral to [and] explicitly relied upon in the complaint." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (emphasis removed) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)).

[4] Polsinelli agreed that "[f]rom this amount," it would "pay all costs and an amount not to exceed $2 [million] for any expert fees or any necessary fees to third parties engaged by [Polsinelli] on [Appellants'] behalf." App. 73 § 6.

[5] The Contract defined the scope of Polsinelli's representation as follows: "Regarding the scope of our representation, we understand that we are being retained to serve as counsel with respect to the defense of any investigation or related enforcement action initiated by the United States Department of Justice, United States Congress, United States Securities [and] Exchange Commission or any other government enforcement agency for any matter involving Philidor's operations associated with its distribution agreement with Valeant . . . ." App. 70 § 2.

Finally, in the section of the Contract discussing fees and expenses, Polsinelli agreed that it would "administer the funds in the best interests of [Appellants]." *Id.*

### B.     Davenport Goes to Trial

The investigations eventually focused on the relationship between Davenport and Gary Tanner, a former Philidor and Valeant employee. Tanner hired the law firm WilmerHale to represent him. WilmerHale did not agree to a flat fee and billed its time by the hour. Davenport and Tanner decided that Polsinelli and WilmerHale should work together to provide a joint defense. And Philidor, through Polsinelli and Jonathan N. Rosen, a partner working out of Polsinelli's Washington, D.C. office, agreed to pay WilmerHale's fees.

In 2016, Davenport and Tanner were arrested and charged with various offenses related to a kickback scheme. Polsinelli realized that it likely would have to defend Davenport through trial with no further remuneration. Polsinelli also knew that WilmerHale billed by the hour and "[t]he more work that [WilmerHale] did, the less it would cost Polsinelli in its lawyers' time and the more money it would cost Philidor." App. 39.

"As the representation went on, Polsinelli . . . pushed more and more work on to [WilmerHale]." *Id.* WilmerHale drafted and filed "the vast majority of court filings, including pretrial motions, responses to the government's motions, jury instructions[,] and proposed voir dire questions." *Id.* This pattern continued at trial, where Polsinelli was "understaffed" and "rel[ied] on [WilmerHale] to do the bulk of the work." App. 40.

For example, "[g]iven the complexity of the case, [WilmerHale] . . . assigned at least four lawyers to each day of trial, while Polsinelli brought two lawyers." *Id.*

After a three-week trial, Davenport and Tanner were convicted on all counts and sentenced to one year and a day in prison, followed by two years of supervised release. The United States Court of Appeals for the Second Circuit upheld their convictions and sentences on appeal.

## C.    Appellants Sue Polsinelli

In November 2020, Appellants sued Polsinelli in the United States District Court for the Eastern District of Pennsylvania.[6]  The complaint alleged three counts: (1) breach of contract, (2) unjust enrichment, and (3) mismanagement of litigation (i.e., legal malpractice).

For the breach-of-contract claim, Appellants alleged that Polsinelli breached the Contract's express terms by "[n]ot doing the work required to defend Davenport . . ."; "[s]ending work Polsinelli should be doing pursuant to the parties' agreement . . . to outside firms . . ."; and "[r]equiring Philidor to arrange for millions of dollars of additional payments for the defense of Davenport, despite the flat fee agreement . . . ." App. 41.  The complaint also alleged that Polsinelli breached the implied covenant of good faith and fair dealing by "t[aking] advantage of the joint defense with [WilmerHale]

---

[6] The complaint also named Rosen as a defendant.  The District Court dismissed Rosen as an individual defendant from the only count that survived the motion-to-dismiss stage. Appellants do not appeal his dismissal.

to avoid doing the work [Polsinelli] had agreed to do to defend Davenport.  As a result, Philidor would be paying [WilmerHale] for work Polsinelli should have performed."  *Id.*

For the unjust enrichment claim, Appellants alleged that "Polsinelli avoided doing the work" "necessary to defend Philidor and Davenport . . . by pushing the work off to third parties, including [WilmerHale] and others."  App. 42.  Thus, "Polsinelli has failed to fulfill its obligations under the [Contract] and will be unjustly enriched if it is permitted to retain the large flat fee."  App. 43.

Finally, for the malpractice claim, Appellants alleged that Polsinelli breached its "duty of care by failing to manage the defense and perform the required work thereby causing [Appellants] to pay millions of dollars to others to perform this work."  *Id.*  The complaint added, "Had [Polsinelli] properly managed the litigation, as they had agreed to, [Appellants] would not have had to incur increased costs of defense."  *Id.*

### D.      The District Court Dismisses Appellants' Claims

In August 2021, the District Court issued a memorandum and order dismissing with prejudice Appellants' breach-of-contract and unjust enrichment claims and allowing their malpractice claim to proceed to discovery.  Appellants unsuccessfully moved for reconsideration.

After discovery, the District Court granted Polsinelli's unopposed motion for summary judgment on the malpractice claim.  Appellants then timely filed a notice of

appeal challenging the District Court's dismissal of their breach-of-contract and unjust enrichment claims. We now resolve that appeal.

## II.  DISCUSSION[7]

Appellants raise three issues on appeal. First, whether the District Court erred by holding that the complaint failed to plausibly allege that Polsinelli breached an express term of the Contract. Second, whether the District Court erred by holding that the complaint failed to plausibly allege that Polsinelli breached the implied covenant of good faith and fair dealing; and, in the alternative, that the gist-of-the-action doctrine prevented Appellants from relying on implied language. Third, whether the District Court erred by holding that Appellants failed to state a plausible claim for unjust enrichment because they did not plead facts suggesting that the Contract was unenforceable. We address each argument below.[8]

### A.  Whether Appellants Plausibly Allege that Polsinelli Breached an Express Term of the Contract

Appellants argue that Polsinelli breached two express terms of the Contract by sending work to WilmerHale: Section 3, which required Polsinelli to "provide legal

---

[7] The District Court had subject-matter jurisdiction under 28 U.S.C. § 1332. This Court has appellate jurisdiction under 28 U.S.C. § 1291. "[W]e exercise plenary review of a district court's dismissal order under Federal Rule of Civil Procedure 12(b)(6)." *W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank*, 712 F.3d 165, 169 n.3 (3d Cir. 2013) (citing *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010)).

[8] "In exercising diversity jurisdiction, a federal court employs the choice-of-law principles of its forum state to determine which substantive law governs . . . ." *SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 204 (3d Cir. 2022) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941)). Here, the forum state is

counsel," App. 71; and Section 6, which required Polsinelli to "administer the funds in the best interests of [Appellants]," App. 73.

Under Pennsylvania law, a breach-of-contract claim has three elements: "(1) the existence of a contract, (2) a breach of a duty imposed by the contract, and (3) damages." *Sullivan v. Chartwell Inv. Partners, LP*, 873 A.2d 710, 716 (Pa. Super. Ct. 2005) (citing *J.F. Walker Co. v. Excalibur Oil Grp., Inc.*, 792 A.2d 1269, 1272 (Pa. Super. Ct. 2002)). "In interpreting the language of a contract," Pennsylvania courts "attempt to ascertain the intent of the parties and give it effect." *LJL Transp., Inc. v. Pilot Air Freight Corp.*, 962 A.2d 639, 647 (Pa. 2009) (citing *Crawford Cent. Sch. Dist. v. Commonwealth*, 888 A.2d 616, 623 (Pa. 2005)). "When the words of an agreement are clear and unambiguous, the intent of the parties is to be ascertained from the language used in the agreement, which will be given its commonly accepted and plain meaning." *Id.* (first citing *Steuart v. McChesney*, 444 A.2d 659, 661 (Pa. 1982); and then citing *Willison v. Consolidation*

---

Pennsylvania. "Under Pennsylvania choice-of-law rules, the first step [of this analysis] involves assessing whether a conflict exists between the substantive law of multiple jurisdictions." *Id.* (citing *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 404 (3d Cir. 2016)). The District Court held that there was no relevant conflict of law and allowed the parties to cite Pennsylvania cases. The parties do not raise any issue with that determination on appeal and solely rely on Pennsylvania law. We take the parties' approach, assume that there is no conflict of law, and decide substantive issues as we predict "the Pennsylvania Supreme Court 'would rule if it were deciding this case,'" *id.* (quoting *Auto-Owners*, 835 F.3d at 403) (citing *Hanna v. Plumer*, 380 U.S. 460, 471 (1965)). When "making that prediction, the decisions of intermediate Pennsylvania appellate courts receive 'significant weight in the absence of an indication that the highest state court would rule otherwise.'" *Id.* (quoting *Polselli v. Nationwide Mut. Fire Ins. Co.*, 126 F.3d 524, 528 n.3 (3d Cir. 1997)) (citing *Pac. Emps. Ins. Co. v. Glob. Reinsurance Corp. of Am.*, 693 F.3d 417, 433 (3d Cir. 2012)).

*Coal. Co.*, 637 A.2d 979, 982 (Pa. 1994)). Pennsylvania courts use dictionaries, including *Black's Law Dictionary*, to help determine the plain meaning of language parties included in a contract. *See, e.g.*, *Sullivan v. Commonwealth*, 708 A.2d 481, 484 (Pa. 1998) (citing *Enactment*, *Black's Law Dictionary* (6th ed. 1990)).

The complaint does not plausibly allege that Polsinelli breached either of the contractual provisions Appellants identify. Beginning with Section 3, *Black's Law Dictionary* defines "counsel" as "[a]dvice or assistance; opinion given as the result of consultation" or "[o]ne or more lawyers who, having the authority to do so, give advice about legal matters; esp., a courtroom advocate." *Counsel*, *Black's Law Dictionary* (11th ed. 2019). There is no dispute that Polsinelli provided counsel: the complaint alleges that "Polsinelli brought two lawyers" to trial and that "[WilmerHale] was drafting and filing the *vast majority* of court filings," App. 39–40 (emphasis added). These allegations challenge the amount of counsel Polsinelli provided, but they do not suggest that Polsinelli failed to provide some legal representation. And Appellants cite no contractual language that expressly required Polsinelli to staff more attorneys at trial, draft more court filings, or otherwise do more legal work. Thus, the complaint does not plausibly allege that Polsinelli breached its express obligation to "provide legal counsel." App. 71 § 3.

Appellants' argument as to the other provision fares no better. Section 6 of the Contract appears to have required Polsinelli to "administer the funds" it received from Appellants to pay outside counsel, experts, and other third parties "in the best interests of [Appellants]." App. 73. This language does not change our analysis because the

9

complaint does not allege that Polsinelli used these "funds" to pay WilmerHale. To the contrary, the complaint alleges that "Philidor, through . . . Polsinelli, agreed that *Philidor* would pay [WilmerHale's] fees." App. 38 (emphasis added); *see also* App. 41 (alleging that Polsinelli's purported failure "to do the work necessary for the defense" meant that "*Philidor* would be paying [WilmerHale] for work Polsinelli should have performed" (emphasis added)). Thus, the complaint does not plausibly allege that Polsinelli breached its express obligation to "administer the funds in the best interests of [Appellants]." App. 73 § 6. Accordingly, for the reasons provided above, the District Court correctly held that the complaint does not plausibly allege Polsinelli breached its express obligations under the Contract.

### B. Whether the Gist-of-the-Action Doctrine Prevents Appellants from Relying on the Implied Covenant of Good Faith and Fair Dealing

Appellants argue that Polsinelli breached the implied covenant of good faith and fair dealing by "slacking off and wilful[ly] rendering . . . imperfect performance" to "den[y] [Appellants] the benefit of the bargain." Opening Br. 19. We need not resolve this dispute, however, because the gist of these allegations sounds in tort.

Under Pennsylvania law, "[c]ourts must . . . determine 'whether the nature of the duty upon which [a] breach of contract claim[] rests is the same as that which forms the basis of [a] tort claim[].'" *Norfolk S. Ry. Co. v. Pittsburgh & W. Va. R.R.*, 870 F.3d 244, 256 (3d Cir. 2017) (final alteration in original) (quoting *Bruno v. Erie Ins. Co.*, 106 A.3d 48, 69 n.17 (Pa. 2014)). When making that assessment, "the critical determinative factor" is "the nature of the duty alleged to have been breached." *SodexoMAGIC*, 24

10

F.4th at 217 (quoting *Bruno*, 106 A.3d at 68).  Allegations sound in contract if "the duty breached is one created by the parties by the terms of their contract—i.e., a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract."  *Bruno*, 106 A.3d at 68 (collecting cases).  But "[i]f . . . the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort."  *Id.* (collecting cases). "[T]he mere existence of a contract between two parties does not . . . classify a claim by a contracting party for injury or loss suffered as the result of actions of the other party in performing the contract as one for breach of contract."  *Id.* at 69.  To the contrary, the Pennsylvania Supreme Court "has long recognized that . . . a negligence claim based on the actions of a contracting party in performing contractual obligations is not viewed as an action on the underlying contract itself, since it is not founded on the breach of any . . . specific executory promise[]."  *Id.* at 69–70 (collecting cases).

The gist of Appellants' allegations based on the implied covenant of good faith and fair dealing is that they paid twice for one defense because Polsinelli did not provide enough legal representation.  These allegations sound in tort because they challenge Polsinelli's professional judgments about the appropriate amount of legal representation to provide.  That issue is unmoored from the Contract because it addresses Polsinelli's general professional duty to adequately represent its clients, which is not contingent on the existence of an engagement letter or other contract.  *See, e.g.*, *Rutyna v. Schweers*, 177 A.3d 927, 929 n.2 (Pa. Super. Ct. 2018) ("In order to prove legal malpractice, a

11

plaintiff must prove: '(1) the employment of the attorney or other basis for duty; (2) the failure of the attorney to exercise ordinary skill and knowledge; and (3) that such negligence was the proximate cause of damage to the plaintiff.'" (quoting *Rizzo v. Haines*, 555 A.2d 58, 65 (Pa. 1989))). In other words, the gist of these allegations is that Polsinelli negligently performed its contractual obligations by only sending two lawyers to trial, failing to draft and file an appropriate number of court filings, and otherwise not providing enough legal representation to mount a proper defense. Appellants do not plausibly allege, however, that Polsinelli breached its specific executory promise to "provide legal counsel." App. 71 § 3. Thus, the gist-of-the-action doctrine bars Appellants from relying on the implied covenant of good faith and fair dealing—or the related doctrine of necessary implication, *see generally Stamerro v. Stamerro*, 889 A.2d 1251, 1259 (Pa. Super. Ct. 2005)—to state a breach-of-contract claim against Polsinelli

12

based on these allegations. Accordingly, the District Court did not err by holding that Appellants cannot rely on implied language to support their breach-of-contract claim.[9] [10]

### C. Whether Appellants Plausibly Allege an Unjust Enrichment Claim

Appellants argue that the complaint states a plausible claim for unjust enrichment because "[t]he federal rules permit a party to allege alternate or inconsistent legal theories" and "the flat fee agreement entered into by [Polsinelli] may be unenforceable." Opening Br. 22–23. Pennsylvania courts have "long . . . held . . . that the doctrine of unjust enrichment is inapplicable when the relationship between parties is founded upon a

---

[9] Appellants argue that the Pennsylvania Superior Court's non-precedential opinion in *Sibley v. Barr & McGogney*, 260 A.3d 132, 2021 WL 2907818 (Pa. Super. Ct. 2021) (unpublished table decision), clarifies that they can pursue a breach-of-contract claim and a tort claim against Polsinelli. *Sibley* is of minimal persuasive value because it relies on the outmoded proposition that "an attorney who agrees for a fee to represent a client is by implication agreeing to provide that client with professional services consistent with those expected of the profession at large." *Id.* at *3 (quoting *Bailey v. Tucker*, 621 A.2d 108, 115 (Pa. 1993)). "Thus, in a breach of contract malpractice action, the attorney's duty is set forth in the terms of the contract." *Id.* (citing *Bailey*, 621 A.2d at 115). This reasoning appears to conflict with the Pennsylvania Supreme Court's holding in *Bruno*, as it always would permit clients who enter into an engagement letter with their attorney to bring dual claims for legal malpractice and breach of contract, whether or not the attorney "breach[ed] any of the specific executory promises which comprise the contract." *Bruno*, 106 A.3d at 70.

[10] For the same basic reasons, the gist-of-the-action doctrine bars Appellants from arguing that Polsinelli breached an implied duty of loyalty by using its discretion to increase Philidor's costs by foisting work on WilmerHale. *See generally Maritrans GP Inc. v. Pepper, Hamilton & Scheetz*, 602 A.2d 1277, 1283 (Pa. 1992) ("At common law, an attorney owes a fiduciary duty to his client; such duty demands undivided loyalty and prohibits the attorney from engaging in conflicts of interest, and breach of such duty is actionable." (collecting cases)).

written agreement or express contract . . . ." *Wilson Area Sch. Dist. v. Skepton*, 895 A.2d 1250, 1254 (Pa. 2006) (collecting cases).

The complaint alleges that "Polsinelli has failed to fulfill its obligations *under the [Contract]* and will be unjustly enriched if it is permitted to retain the large flat fee." App. 43 (emphasis added). This theory of liability cannot support an unjust enrichment claim because it assumes that a written agreement founded the parties' relationship. And the ability to plead alternative or inconsistent claims under Federal Rule of Civil Procedure 8(d) offers no help because the complaint does not allege facts suggesting that the Contract is unenforceable. *Cf. Yarnall v. Almy*, 703 A.2d 535, 538 (Pa. Super. Ct. 1997) ("In order to form a contract, there must be an offer, acceptance, and consideration . . . ." (citing *Jenkins v. County of Schuylkill*, 658 A.2d 380, 383 (Pa. Super. Ct. 1995))); *Hickey v. Univ. of Pittsburgh*, --- F.4th ---, No. 21-2013, 2023 WL 5734922, at *9 (3d Cir. Sept. 6, 2023) ("Although Pennsylvania law bars unjust enrichment claims when a contract . . . governs the parties' relationship, the Federal Rules of Civil Procedure permit such claims to be pleaded in the alternative where . . . the existence or applicability of a contract is in dispute." (first citing *Hershey Foods Corp. v. Ralph Chapek, Inc.*, 828 F.2d 989, 999 (3d Cir. 1987); and then citing Fed. R. Civ. P. 8(d)(3))).

Appellants respond that the Pennsylvania Rule of Professional Conduct prohibiting lawyers from charging illegal or excessive fees could make the Contract unenforceable. *See* Pa. R.P.C. 1.5(a) ("A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee."). Appellants cite two cases to support this argument: *Merva v. Workers' Comp. Appeal Bd. (In re St. John the Baptist*

14

*R.C. Church)*, 784 A.2d 222 (Pa. Commw. Ct. 2001), and *Medina v. Richard A. Kraslow,*
*P.C.*, 53 N.Y.S. 3d 116 (N.Y. App. Div. 2017). *Merva* is distinguishable because it
addresses the public policy against contracts that pay expert witnesses an amount
"contingent on the outcome of [a] controversy." 784 A.2d at 230 (quoting Restatement
(First) of Contracts § 552 (Am. L. Inst. 1932)). It is unclear how a public policy
concerned with ensuring the veracity of witness testimony applies to a purportedly
excessive fee agreement between a lawyer and their client, *see, e.g.*, *Belfonte v. Miller*,
243 A.2d 150, 153 (Pa. Super. Ct. 1968) ("Improper conduct or bias can be predicted
easily when the compensation of the witness is directly related to the absolute amount of
an award which may in turn be dependent to a great degree on the testimony of that same
witness."), and Appellants do not help us make the connection. *Medina* offers little
persuasive value because it is a decision by a New York court applying New York law.
53 N.Y.S. 3d at 117–18 (applying New York contract law and the New York Rules of
Professional Conduct).

Apart from citing two inapposite cases, Appellants make no argument—and offer
no support—for their novel theory that a purportedly excessive fee arrangement between
an attorney and their client is unenforceable under Pennsylvania law. "Arguments raised
in such a cursory fashion, without adequate citation to the record and authority, are
deemed [forfeited]." *United States v. Shaw*, 891 F.3d 441, 455 n.17 (3d Cir. 2018) (first
citing *Kost v. Kozakiewicz*, 1 F.3d 176, 182 (3d Cir. 1993); and then citing Fed. R. App.

15

P. 28(a)(8)(A)).  Thus, we hold that the District Court did not err by dismissing the unjust enrichment claim.[11]

## III.    CONCLUSION

For the reasons discussed above, we will affirm the District Court's order granting Polsinelli's motion to dismiss.

---

[11] Appellants' last-ditch attempt to challenge as error the District Court's failure to grant leave to amend the unjust enrichment claim by first asserting it on appeal in their reply brief and by not providing a draft amended complaint to the District Court is fatal.  *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252–53 (3d Cir. 2007) (requiring proposed amended complaint in non-civil rights cases); *Hoxworth v. Blinder, Robinson & Co., Inc.*, 903 F.2d 186, 204 n.29 (3d Cir. 1990) (declining to consider arguments first raised on appeal in reply brief).